J-S61017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.T.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.L.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1332 EDA 2017 |

Appeal from the Decree Entered March 23, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000877-2016,
CP-51-DP-0002123-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: S.T.H.-C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.L.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1335 EDA 2017 |

Appeal from the Decree Dated March 23, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000878-2016,
CP-51-DP-0000314-2015

| IN THE INTEREST OF: S.A.S.H.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.L.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1338 EDA 2017 |

Appeal from the Decree Entered March 23, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000879-2016,
CP-51-DP-0000313-2015

| IN THE INTEREST OF: S.T.H.-C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.L.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1340 EDA 2017 |

Appeal from the Decree Entered March 23, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000880-2016,
CP-51-DP-0002122-2014

| IN THE INTEREST OF: S.S.A.H.-C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.L.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1342 EDA 2017 |

Appeal from the Decree Entered March 23, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000881-2016,
CP-51-DP-0002120-2014

- 2 -

J-S61017-17

BEFORE:   LAZARUS, J., RANSOM, J., and PLATT*, J.

MEMORANDUM BY RANSOM, J.:                **FILED OCTOBER 19, 2017**

Appellant, S.L.C. ("Mother"), files this appeal from the decrees entered March 23, 2017, in the Philadelphia County Court of Common Pleas, by the Honorable Allan L. Tereshko, accepting Mother's Voluntary Relinquishment of Parental Rights to her five minor children, S.T.C. ("Child 1"), born in May of 2014; S.T.H.-C. ("Child 2"), born in April of 2006; S.A.S.H.-C. ("Child 3"), born in August of 2009; Sa.T.H.-C. ("Child 4"), born in November of 2011; and S.S.A.H.-C. ("Child 5"), born in May of 2008 (collectively, the "Children"), terminating Mother's parental rights to the Children, and changing the Children's goal to adoption.[1, 2]   After review, we affirm the trial court's decrees.[3]

In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court set forth the factual and procedural history of this matter, which the record evidence supports.  As such, we adopt it herein and for the purpose of further appellate review.  Trial Court Opinion ("TCO"), 6/7/17, at 3-13.

---

* Retired Senior Judge assigned to the Superior Court.

[1] J.F. is the father of Child 1.  W.H. is the father of Child 2, Child 3, Child 4 and Child 5.  Both J.F. and W.H.'s parental rights were involuntarily terminated by decree the same day.  Neither J.F. nor W.H. has filed notices of appeal with regard to any child.

[2] Mother has two other children in DHS custody that are not subject to this appeal.

[3] This Court consolidated these appeals by Order dated May 23, 2017.

- 3 -

By way of background, the family became known to DHS on July 15, 2014, when DHS received a General Services Report, which alleged that the Maternal Grandmother of the Children had physically abused Child 1. *Id.* at 3. On August 8, 2014, in-home services were implemented through the Community Umbrella Agency ("CUA") Catholic Social Services. *Id.* Child 1, Child 4, and Child 5 were adjudicated dependent on September 15, 2014. *Id.* at 5. Child 2 and Child 3 were adjudicated dependent on February 26, 2015. *Id.* at 11. Permanency review hearings were held on April 13, 2015, July 6, 2015, and November 9, 2015. *Id*. at 10-12. The first termination hearing was held on October 13, 2016, before the Honorable Allan L. Tereshko. *Id.* at 14. On this date, prior to the hearing, and after consultation with her attorney, Mother signed a Petition for Voluntary Relinquishment of Parental Rights and a Petition to Confirm Consent. *Id.* at 1-2. The trial court took this under consideration, and held the matter in abeyance to await the expiration of the period of time in which Mother could withdraw her voluntary relinquishment. *Id.* at 21. DHS filed the Petition for Voluntary Relinquishment of Parental Rights and a Petition to Confirm Consent on December 21, 2016, and a hearing on the petition was held on March 23, 2017. *Id.* at 2. At both hearings, the trial court heard testimony from Tracy McNair, the CUA social worker. Mother was present for both hearings, but did not testify on her own behalf.

On March 23, 2017, the trial court entered decrees granting Voluntary Termination of Parental Rights for the Children as to Mother, and changed the

Children's permanency goals to adoption. Mother timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion on June 7, 2017.

On appeal, Mother, through counsel, raises the following issue for our review:

> Did the [trial] [c]ourt err as a matter of law and abuse its discretion in refusing to allow [M]other to revoke her Voluntary Relinquishment of Parental Rights which were executed more than thirty (30) days prior to the Termination of Parental Rights hearing but to which she testified were signed under duress and threat by the CUA case manager, that a Dependent Petition would be filed for a minor child in her care and uninvolved with [DHS][?]

Mother's Brief, at 3.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Further, as set forth by our Supreme Court:

> A party seeking to disturb a termination decree must show that the consent given to terminate parental rights was not intelligent,

- 5 -

voluntary and deliberate. **See Susko Adoption Case**, 363 Pa. 78, 83, 69 A.2d 132, 135 (1949) ("consent prescribed by the Adoption Act is a parental consent that is intelligent, voluntary and deliberate."); *accord* **Chambers Appeal**, [452 Pa. 149, 153, 305 A.2d 360, 362 (1973) ] ...; **In re Fritz**, 460 Pa. 265, 333 A.2d 466 (1975).

**In re M.L.O.**, 490 Pa. at 240, 416 A.2d at 89–90.

Mother argues the trial court erred as a matter of law and abused its discretion by refusing to allow Mother to revoke her voluntary relinquishment of parental rights, which she maintains were signed under duress and threat by the CUA case manager. Mother's Brief, at 5. Mother further argues the CUA case manager threatened that, unless Mother signed a voluntary relinquishment, a dependency petition would be filed for a minor child in Mother's care who was not involved with DHS. **Id.**

At the October 13, 2016 hearing, Tanesha Clement, Assistant City Solicitor representing DHS, stated on the record that Mother signed a voluntary relinquishment of parental rights petition moments before the hearing. Notes of Testimony ("N.T."), 10/13/16, at 7. Ms. Clement requested that Mr. McNair testify for the purpose of establishing grounds for involuntary termination of Mother's parental rights to the Children, and asked the trial court to hold its decision in abeyance until the voluntary relinquishment for the Children matured. **Id.**

At the March 23, 2017 hearing, the trial court again heard testimony from Mr. McNair. Mr. McNair testified he was present when Mother signed the Petitions for Voluntary Relinquishment of Parental Rights and the Consent of

Birth Mother.  N.T., 3/27/17, at 27.  Mr. McNair further testified that Mother did not appear to be under the influence, Mother appeared to understand both what she was reading and what Mr. McNair communicated to her, and that Mother spoke with her attorney before signing the voluntary relinquishment petition.  *Id.* at 28.  Mr. McNair stated that he did not promise Mother anything in return for signing the petitions and that he neither threatened nor pressured Mother.  *Id.* at 29.  Mr. McNair opined that Mother signed the petitions of her own free will and volition.  *Id.*  Mr. McNair stated that Mother contacted him via telephone and told him that she wished to revoke her consent, whereupon he advised Mother to put her wishes in writing and contact her attorney.  *Id.* at 30-31.

At issue in this case is the application of Section 2711 of the Adoption Act.  This Court has explained,

> "[T]he interpretation and application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law." **Wilson v. Transport Ins. Co.,** 889 A.2d 563, 570 (Pa. Super. 2005).  "As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary." **In re Wilson,** 879 A.2d 199, 214 (Pa. Super. 2005) (*en banc*).

**In re Adoption of J.A.S.**, 939 A.2d 403, 405 (Pa. Super. 2007), *appeal denied*, 954 A.2d 577 (Pa. 2008).

Section 2711 provides, in relevant part:

**§ 2711.  Consents necessary to adoption.**

**(a)** *General rule.* -- Except as otherwise provided in this part, consent to an adoption shall be required of the following:

. . .

(3) The parents or surviving parent of an adoptee who has not reached the age of 18 years.

. . .

**(c)** *Validity of consent.* -- No consent shall be valid if it was executed prior to or within 72 hours after the birth of the child. A putative father may execute a consent at any time after receiving notice of the expected or actual birth of the child. Any consent given outside this Commonwealth shall be valid for purposes of this section if it was given in accordance with the laws of the jurisdiction where it was executed. **A consent to an adoption may only be revoked as set forth in this subsection. The revocation of a consent shall be in writing and shall be served upon the agency or adult to whom the child was relinquished**. The following apply:

(1) Except as otherwise provided in paragraph (3):
. . .

(ii) For a consent to an adoption executed by a birth mother, **the consent is irrevocable more than 30 days after the execution of the consent.**

(2) An individual may not waive the revocation period under paragraph (1).

(3) Notwithstanding paragraph (1), the following apply:

(i) An individual who executed a consent to an adoption **may challenge the validity of the consent only by filing a petition alleging fraud or duress** within the earlier of the following time frames:

(A) **Sixty days after** the birth of the child or **the execution of the consent**, whichever occurs later.

. . .

(ii) A consent to an adoption may be invalidated **only if** the alleged fraud or duress under subparagraph (i) is proven by:

. . .

(B) clear and convincing evidence in all other cases.

. . .

23 Pa.C.S.A. § 2711 (internal emphasis added).

In ***In re Adoption of J.A.S., supra***, this Court stated:

Significantly, [ ] Section [2711] describes the timeline for revocation of a consent to adoption, as well as a challenge to its validity (and only on the grounds of fraud or duress). This Section further makes clear that a revocation and/or a challenge to the validity of a consent to adoption must be in conformity with the Act.

. . .

Hence the statute renders a consent to adoption irrevocable more than thirty (30) days after execution. ***See*** 23 Pa.C.S.A. §2711(c)(1)(ii).[2] Additionally, the statute precludes a challenge to the validity of the consent to adoption after sixty (60) days following the birth of the child or the execution of the consent, whichever occurs later, and only upon the grounds of fraud or duress. ***See*** 23 Pa.C.S.A. § 2711(c)(3)(i)(A).

_____

[2] Nothing in the statutes presupposes the "validity" of the consent.

***In re Adoption of J.A.S.***, 939 A.2d at 407-408.

In its opinion, the trial court found that Mother's consent was intelligent, voluntary, and deliberate. TCO, at 22. Further, neither Mother nor her

attorney made any attempt to revoke that consent in writing as required. *Id.*

The trial court concluded:

> The uncontradicted evidence is that Mother was competent when explained the voluntary relinquishments. She was explained the impact of the relinquishments. The evidence is uncontested that the witness who observed believed her to be fully informed of the impact of the relinquishments both in terms of terminating her parental rights and in terms of how such a document might affect the consideration of placement of other children going forward, in that, if her rights were involuntary terminated, it could be considered by operation of law as a factor effecting the placement of [the C]hildren, another child going forward could be considered as an aggravating circumstance which is a matter not within any discretion of the Court but a matter entered by operation of law.
>
> The test is not whether she made a phone call to someone. The test is, did she file a written retraction of that statement. She was represented by current counsel at the time. Neither counsel nor Mother filed such a retraction. The statute is quite clear that the only way a retraction can be executed is by a written submission which is filed with the Court within the 30[-]day period allowed by law.
>
> Mother's execution of the voluntary relinquishment of [the C]hildren is deemed to be final and irrevocable, absent such a filing. Therefore, as a matter of law, [M]other's rights to [the C]hildren for whom she executed such document are terminated.

TCO, at 23-24 (internal citations omitted).

The trial court determined Mr. McNair testified credibly that, at the time she signed the voluntary relinquishment petitions, Mother was not under the influence of any drugs or alcohol, understood the documents, and what he communicated to her regarding voluntary relinquishment of her parental rights. *Id.* at 21. The trial court further determined Mr. McNair credibly

testified he received a phone call from Mother where she expressed her wish to revoke her consent, and that he advised her during that same call to submit a written request, and to contact her attorney. *Id.* at 22. We defer to a trial court's determination of credibility, absent an abuse of discretion, and discern no such abuse in its finding Mr. McNair's testimony credible. *In re M.G.*, 855 A.2d 68, 73-74. Moreover, the competent evidence in the record supports the trial court's determinations that Mother's consent was intelligent, voluntary, and deliberate, and that neither Mother, nor her attorney made any attempts to revoke Mother's consent in writing, as required by statute. Accordingly, we can discern no abuse of discretion or error of law in the trial court's conclusion. *See id.* Therefore, we affirm the decrees accepting Mother's Voluntary Relinquishment of Parental Children to Children, terminating Mother's Parental Rights to Children, and changing the Children's Goal to Adoption.

Decrees affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2017

- 11 -