J-S51016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.O. A/K/A S.H.L.O., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.S., MOTHER | : : : : : : | |
| | : | No. 633 EDA 2018 |

Appeal from the Decree Entered January 25, 2018
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  CP-51-AP-0000943-2017

BEFORE:  DUBOW, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.:                    **FILED OCTOBER 17, 2018**

J.S. (Mother) appeals from the decree entered January 25, 2018, which confirmed her consent to voluntary relinquishment of her parental rights to her minor daughter, S.O. (Child), born September of 2015.[1]  Additionally, Mother's counsel, Yalonda Houston, Esq. (Counsel), seeks to withdraw her representation of Mother pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and  ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).[2]  We affirm and grant Counsel's petition to withdraw.

---

[1] The parental rights of A.O. (Father) were separately terminated on April 9, 2018.  Father is not a party to the instant appeal and has not filed a separate appeal.

[2] ***See also In re V.E.***, 611 A.2d 1267, 1275 (Pa. Super. 1992) (extending ***Anders*** briefing criteria to appeals by indigent parents represented by court-appointed counsel in involuntary termination and voluntary relinquishment matters).

The parties are familiar with the full background of this case. We need only reiterate here that the family came to the attention of the Philadelphia Department of Human Services (DHS) in September of 2015, based on a general protective services (GPS) report regarding Mother's drug use and living situation. In-home services were provided to Mother in October of 2015. Mother initially attended inpatient substance abuse treatment and planned to continue outpatient substance abuse treatment. Mother moved to the home of her great-aunt, J.M. (Great-Aunt).

In July of 2016, DHS obtained an order of protective custody (OPC) for Child based on allegations that Mother took Child from Great-Aunt's home, was using drugs in Child's presence, and was living with Child in inappropriate conditions. In August of 2016, Child was adjudicated dependent.

Mother reportedly tested positive for PCP and marijuana in August of 2016, and began missing drug screens in November of 2016. In July of 2017, it was reported that Mother was not engaging in any drug and alcohol program. Further, it was reported that Mother was referred to a short-term dual diagnosis treatment program, but that Mother did not attend the scheduled intake meeting. On September 25, 2017, DHS filed a petition seeking to involuntarily terminate Mother's parental rights.

On October 11, 2017, Mother executed a form consent to adoption. In full, the consent read as follows:

> I, [Mother], am an adult, having been born [in January 1990]. I am single/married and the mother of [Child] who was born [in September 2015] in Philadelphia, PA.

- 2 -

The father of the child/children is [A.O.]

I hereby voluntarily and unconditionally consent to the adoption of the above named child/children.

I understand that by signing this consent, I indicate my intent to permanently give up all rights to said child/children.

I understand said child/children will be placed for adoption.

I understand I may revoke this consent to permanently give up all rights to this child/children by placing the revocation in writing and serving it upon the agency or adult to whom the child/children was relinquished.

If I am the birth mother of the child, I understand that this consent to an adoption is irrevocable unless I revoke it within 30 days after executing it by delivering a written revocation to the Philadelphia Department of Human Services, 1515 Arch Street, 6th Floor, Philadelphia, PA 19102, Attention: Adoption Specialist Unit, Derek Baker-Gutierrez, Supervisor.

I have read and understand the above and I am signing it as a free and voluntary act.

*See* Pet. to Confirm Consent, 11/21/17, Ex. A. Great-Aunt and a Community Umbrella Agency (CUA) representative witnessed Mother execute, sign, and date the consent. *Id.*

On November 21, 2017, DHS filed a petition for voluntary relinquishment of Mother's parental rights[3] and a petition to confirm consent,

---

[3] The petition for voluntary relinquishment of parental rights stated that it was a petition by Mother and DHS. *See* Pet. for Voluntary Relinquishment of Parental Rights, 11/21/17, at 1. The petition bears Appellant's handwritten name underneath the request to terminate Mother's parental rights to Child and on the attached verification.

requesting that the court view and approve Mother's consent to the termination of her parental rights to Child.

On January 25, 2018, the trial court convened a hearing to confirm Mother's consent for voluntary relinquishment of her parental rights. Mother was not present at the hearing. Substitute counsel appeared on her behalf and in place of Counsel. *See* N.T., 1/25/18, at 2-4.

Great-Aunt testified at the hearing that she was present when Mother signed the consent and that Mother was not promised anything in exchange for signing. *Id.* at 5. Great-Aunt testified that she knew Mother very well and that she appeared to understand what she was signing and did not appear to be under the influence of any drugs or alcohol. *Id.*

Miyoshi Contee, the CUA Turning Points for Children Case Manager, testified that Mother did not contact her after signing the consent form. *Id.* at 6. Ms. Contee believed that it was in Child's best interest to proceed on the petition to confirm consent, Child was safe in a kinship home, and Child's needs were being met. *Id.* at 6-7.

The trial court determined there was no legal objection from Mother to the termination and that she had knowingly and voluntarily given her consent. *Id.* at 7. At the close of the hearing, the court terminated Mother's parental rights. *Id.*

On February 23, 2018, Mother timely filed a *pro se* notice of appeal and a concise statement of errors complained of on appeal pursuant to Rule

Pa.R.A.P. 1925(a)(2)(i) and (b).[4]  In her *pro se* Rule 1925(b) statement, Mother averred that she did not knowingly consent to the termination of her parental rights and believed she was signing forms that would allow her to regain custody of Child from Great-Aunt once Mother's employment became stable.[5]  **See** Concise Statement of Errors, 2/23/18, at 1.

On April 23, 2018, we remanded this matter to the trial court to determine whether Counsel abandoned Mother due to Counsel's failure to file a docketing statement.  Counsel thereafter filed Mother's docketing statement on April 25, 2018, and this Court vacated the April 23, 2018 order.

Counsel has filed an **Anders** brief identifying the following issue:

Whether the trial court committed reversible error, when it granted an order confirming consent to Mother's petition to voluntar[ily] terminate her parental rights, finding that Mother

_____

[4] **See Commonwealth v. Williams**, 151 A.3d 621, 624 (Pa. Super. 2016) (noting that this Court is required to docket a *pro se* notice of appeal despite appellant being represented by counsel).

[5] In full, Mother's *pro se* Rule 1925(b) statement read:

I was unaware that I was signing a permanent termination of my parental rights.  I believed [Great-Aunt] would have temporary custody and I would regain custody when my employment becomes stable.  I still see [Child] almost daily, picking her up from daycare, and I spend money on clothes and food for her.  I am actively working towards a more stable employment and have been looking forward to regaining custody and creating a life with [Child].

Pa.R.A.P. 1925(b) Statement, 2/23/18.

- 5 -

[knowingly] and voluntar[ily] executed the petition to terminate her parental rights.

*See Anders* Brief at 6 (full capitalization omitted). Mother has not filed a response to the *Anders* brief either *pro se* or with new counsel.

"When faced with an *Anders* brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw." *Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). Prior to withdrawing as counsel on direct appeal under *Anders*, counsel must file a petition to withdraw and

> provide a copy of the *Anders* brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

*Commonwealth v. Orellana*, 86 A.3d 877, 879-80 (Pa. Super. 2014).

Additionally, counsel must file a brief that meets the requirements established by the Pennsylvania Supreme Court in *Santiago*, namely:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

- 6 -

*Santiago*, 978 A.2d at 361. Only after determining that counsel has satisfied these technical requirements of *Anders* and *Santiago*, may this Court "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

Counsel has complied with the procedures for seeking withdrawal by filing a petition to withdraw, sending Mother a letter explaining the rights enumerated in *Nischan*, and supplying Mother with a copy of the *Anders* brief. Moreover, counsel's *Anders* brief complies with the requirements of *Santiago*. Counsel includes a summary of the relevant factual and procedural history, refers to the portions of the record that could arguably support Mother's claim, and sets forth her conclusion that the appeal is frivolous. She explains her reasoning and supports her rationale with citations to the record and pertinent legal authority. Thus, Counsel has complied with the technical requirements for withdrawal, and we will independently review the record to determine if the issues raised are frivolous.

Essentially, the issue identified by Counsel challenges whether Mother's voluntary relinquishment of her parental rights was knowingly, intelligently, and voluntarily given. *See Anders* Brief at 17-20.

Our standard of review is as follows:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence.

- 7 -

Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of that discretion.

*In re A.J.B.*, 797 A.2d 264, 266 (Pa. Super. 2002) (citation omitted). "A party seeking to disturb a termination decree must show that the consent given to terminate parental rights was not intelligent, voluntary and deliberate." *In re M.L.O.*, 416 A.2d 88, 90 (Pa. 1980).

A parent may voluntarily relinquish her parental rights. *See* 23 Pa.C.S. §§ 2501-2505. Section 2504 provides an alternative procedure for relinquishment as follows:

§ 2504. Alternative procedure for relinquishment

**(a) Petition to confirm consent to adoption.—**If the parent or parents of the child have executed consents to an adoption, upon petition by the intermediary or, where there is no intermediary, by the adoptive parent, the court shall hold a hearing for the purpose of confirming a consent to an adoption upon expiration of the time period under section 2711 (relating to consents necessary to adoption). The original consent or consents to the adoption shall be attached to the petition.

**(b) Hearing.—**Upon presentation of a petition filed pursuant to this section, the court shall fix a time for a hearing which shall not be less than ten days after filing of the petition. Notice of the hearing shall be by personal service or by registered mail or by such other means as the court may require upon the consenter and shall be in the form provided in section 2513(b) (relating to hearing). Notice of the hearing shall be given to the other parent or parents, to the putative father whose parental rights could be terminated pursuant to subsection (c) and to the parents or guardian of a consenting parent who has not reached 18 years of age. The notice shall state that the consenting parent's or putative father's rights may be terminated as a result of the hearing. After hearing, which shall be private, the court may enter a decree of termination of parental rights in the case of a relinquishment to an adult or a decree of termination of parental

rights and duties, including the obligation of support, in the case of a relinquishment to an agency.

23 Pa.C.S. § 2504(a)-(b).

Section 2711 of the Adoption Act lays out the requirements for consents and the procedure and timeframes for the revocation of a voluntary consent to adoption. *See* 23 Pa.C.S. § 2711. Section 2711(c) provides, in relevant part:

> **(c) Validity of consent.—** . . . A consent to an adoption may only be revoked as set forth in this subsection. The revocation of a consent shall be in writing and shall be served upon the agency or adult to whom the child was relinquished. The following apply:
>
> > (1) Except as otherwise provided in paragraph (3):
> >
> > > (i) For a consent to an adoption executed by a birth father or a putative father, the consent is irrevocable more than 30 days after the birth of the child or the execution of the consent, whichever occurs later.
> > >
> > > (ii) For a consent to an adoption executed by a birth mother, the consent is irrevocable more than 30 days after the execution of the consent.
> >
> > (2) An individual may not waive the revocation period under paragraph (1).
> >
> > (3) Notwithstanding paragraph (1), the following apply:
> >
> > > (i) An individual who executed a consent to an adoption may challenge the validity of the consent only by filing a petition alleging fraud or duress within the earlier of the following time frames:
> > >
> > > > (A) Sixty days after the birth of the child or the execution of the consent, whichever occurs later.
> > > >
> > > > (B) Thirty days after the entry of the adoption decree.

(ii) A consent to an adoption may be invalidated only if the alleged fraud or duress under subparagraph (i) is proven by:

(A) a preponderance of the evidence in the case of consent by a person 21 years of age or younger; or

(B) clear and convincing evidence in all other cases.

23 Pa.C.S. § 2711(c).

This Court has stated that "Section 2711(c) sets forth the only procedure for revoking a consent to adoption; it requires that the revocation be timely, in writing, and served upon appropriate parties."[6] *In re R.I.*, 172 A.3d 665, 667 (Pa. Super. 2017) (citing 23 Pa.C.S. § 2711(c)). For consents executed by the birth mother, the consent is generally irrevocable more than thirty days after the execution of the consent, unless the birth mother proves fraud or duress within sixty days of executing the consent. *Id.* at 668 & n.2 (citing 23 Pa.C.S. § 2711(c)).

In *R.I.*, this Court concluded that a trial court erred in considering the merits of an oral and untimely revocation of a consent to adoption. *Id.* at 668. In so holding, we vacated the order granting the revocation of consent and remanded for the court to grant a petition for voluntary relinquishment. *Id.*

---

[6] The purpose of 23 Pa.C.S. § 2311 is to afford finality to the adoption process. *In re Adoption of J.A.S.*, 939 A.2d 403, 408 (Pa. Super. 2007).

- 10 -

Here, Mother did not revoke her consent in writing within thirty days of executing the consent on October 11, 2017, pursuant to 23 Pa.C.S. § 2711(c)(1)(ii), or challenge the consent within sixty days under 23 Pa.C.S. § 2711(c)(3)(i)(A). Instead, Mother first attacked the validity of her consent on February 23, 2018, when she filed her *pro se* notice of appeal and Rule 1925(b) statement more than 135 days after executing her consent. Accordingly, Mother did not comply with the requirements of 23 Pa.C.S. § 2711(c), **see R.I.**, 172 A.3d at 667, or preserve this issue in the trial court. **See** Pa.R.A.P. 302(a).

In any event, Mother's intended challenge to the validity of her consent lacks any support. Specifically, Mother suggests that she did not understand the consent and believed that it was a temporary custody arrangement. Mother also suggests that Great-Aunt assured her the arrangement was temporary.

However, the consent Mother signed conformed to the requirements of 23 Pa.C.S. § 2711(d) (referring to contents of consent). It clearly informed her that signing would acknowledge her voluntary and unconditional consent to placing Child for adoption. The consent also stated that she could revoke her consent within thirty days in a writing served upon all interested parties. **See** Pet. to Confirm Consent, 11/21/17, Ex. A. Both witnesses to the execution of the consent testified that Mother read and understood English, appeared to understand the consents she was signing, and did not appear to be under the influence of drugs or alcohol. **See** N.T., 1/25/18, at 2-7.

- 11 -

Therefore, there were no suggestions that any of the petitions filed were intended to convey temporary custody. Moreover, there is no support for Appellant's assertions that her consent was unknowing or involuntary or the result of fraud or duress.

Therefore, having reviewed the record, we agree with Counsel's assessment that Mother's intended issue is frivolous. Our independent review reveals no further issues of arguable merit preserved for review. Accordingly, we grant counsel's petition to withdraw and affirm the trial court's confirmation of Mother's consent to relinquish her parental rights. ***See In re A.J.B.***, 797 A.2d at 266.

Decree affirmed. Petition to withdraw granted.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/17/18